May it please the Court. My name is Scott Cameron for Appellant Denzel Crisp. I'm going to attempt to reserve four minutes. I may end up with three or less, but I'll manage my time accordingly. Thank you. I'm hoping to talk about three topics here in my oral argument. The first one is that the look-through doctrine is not in any way, the presumption in that doctrine, is not in any way weakened by the California Supreme Court's decision in Robinson v. Lewis. The fact that the California Supreme Court has original habeas jurisdiction does not weaken the presumption. The second topic I'm hoping to get to is, it got some Mueller case in this court that says that it is relevant in certain cases like this one that the fact that the Superior Court, the last reasoned decision, did not issue an OSC can be a factor in whether or not the Superior Court made a reasonable determination of the facts. And I will be talking about that. And the third, final point I intend to talk about is that all these new claims that Respondent is bringing, excuse me, new grounds for affirmance that Respondent is advancing for the first time on the appeal, that those don't get epidefference because they were not considered by the Superior Court. So as to this first point on the look-through doctrine, Respondent advances an assertion that because the California Supreme Court has said they have original jurisdiction, they don't necessarily make a, they're not making a review of a lower court decision. He claims that because that presumption, because of that procedure, that he can raise just about any new grounds because the California Supreme Court was looking at it like in the first instance. But Wilson v. Sellers kind of put the brakes on that in itself. Looking at a Georgia case, the Georgia Supreme Court said our cases are not to be read as reviewing the lower court decision. And Wilson v. Sellers said that the presumption still stands. It's not altered by that. And this court, the Ninth Circuit, has agreed with that in Flemings v. Madison. Those are in my briefing. As to this second point, the fact that the Superior Court did not issue an OSC, and this court has a very, I think, well-reasoned decision in Nunez v. Mueller. When you're looking at whether or not a Superior Court issued, made a reasonable factual determination, the method that they use is part of that determination. And here, Crisp set forth quite a bit in his original petition in the Superior Court. And I contend he clearly set forth the prima facie case. But no order to show cause was issued. And so he was prevented from further factual development. And so if this court finds that the Superior Court was unreasonable in its determination, and only then do we get to these new claims raised by the respondent, which is kind of my third topic. And that is, for instance, he raises a claim that the firearms expert used improper methodology and his technique for the testing of the firearm. And that because of that, the California Supreme Court could have denied that one of the three major claims here. They could have denied it on that basis. Well, that ignores the look-through doctrine, because that wasn't considered by the Superior Court. It wasn't even briefed by the respondent in the District Court. And here he comes with this new grounds for affirmance. It gets no epidefference, because the look-through doctrine is strong. He's trying to use the... But, counsel, even if you're correct on that, and just going with the same ground that you're talking about, the Superior Court said the witnesses described hearing two or three gunshots, meaning one or two, one or more shell casings fell outside the vehicle. Nothing in the expert's report indicates that he considered this. And that is part of the basis for the Superior Court's determination on the expert witness issue. So even if your friend is incorrect on what the California Supreme Court did, that finding is still entitled to epidefference. That particular finding... Well, isn't that what you were talking about with the expert, the firearms expert? I was talking about the firearms expert, but the ground that he's raising now that's new is that the methodology, the technique that he used in the testing that he didn't have, you know, that he shot at different angles. But even if you're right, how do you get around the ground ruled on by the Superior Court on that issue? Well, I think that's an excellent question. Some things to keep in mind. Two key points about the importance of expert Vincus as a firearms expert. One is that the prosecution did call an expert on this topic. Okay? That's key because now we want to counter with our own expert. There was one casing found in the vehicle, and I think that's your point, but there were none, this is important, there were none found outside the vehicle either. There were none found outside, but the testimony was that witnesses heard two or three gunshots. The expert only didn't account for that in his report, and the Superior Court basically said that this is not likely to have affected the outcome of the case because the fact that three shots were heard, if there were in fact three shots and just simply two shell casings that weren't recovered, that rendered the expert's putative report, you know, wasn't going to move the needle. And why isn't that entitled to epidephrase? That is entitled to epidephrase. That finding is. But it was an unreasonable determination of the facts because there were no casings found at the time of the shooting, and, you know, we don't really know what happened between the drive, between the shooting. What time was the shooting? It was in the... It was dark? It was dark. So the fact that they didn't recover the two shell casings, I mean, that wasn't important to the Superior Court because witnesses heard two to three shots. Well, I believe it was well lit. There were streetlights. There's some, you know, and it wouldn't be the first time that law enforcement has looked for shell casings in the evening, that's for sure. There none were found. And the mere fact that, you know, there's nothing in the record about how thorough this, that the car was searched by evidence technicians, they just, they found a casing between a seat and the center console. So I don't think it's determinative that only one was found. The point that Vincus was going to make was that one was found in the car. And if there's an arm out the window, that's unlikely, the position of the gun was inside the car when that casing landed. That was his opinion. You know, he said it was likely. Okay, I want to overstate his opinion. He did say that with some reasonable degree of difficulty, the passenger could do it, but he was considering the ergonomics of the situation. And if you're the passenger, it is in the record that the client is right-handed. To not have your arm out, you know, you'd have to have the gun in a position where it would land inside. It's not really ergonomically feasible. You have to contort yourself. In Mr. Blasier's declaration, there was one issue where he said, I didn't have, I can't think of a tactical reason for a decision that I made. But he didn't say that in his declaration with regard to this issue vis-a-vis not calling the firearms expert, correct? Correct. So he, I believe his declaration will say that he was an important witness. He's looking at it. He agrees it's an important witness. And he really doesn't offer a reason why he didn't call him, essentially. But in one of the other areas where he had no tactical reason that he can think of, he said that. And as I think your friend has pointed out, he didn't say that with regard to this issue. That is correct. He did not say that to this issue. But, you know, he went to opening statement and said he's going to call him, right? Well, the district court, I mean, the Superior Court found that it was not, in fact, a promise. That the language was not a promise in the same way that our prior cases had talked about a promise, right? Well, you know what? The district attorney was at that trial. And he got up in closing statement and he called it a promise. But we have the words that were used. Anticipate was the word. Anticipate. But, you know, I cited some cases, out-of-jurisdiction cases that talked about the definition of the word anticipate and the dictionary. And anticipate is, well, I'll tell you what it is right here. I'll read it directly. But it's something like, to expect as to be certain is a particular definition. And I contend, you know, the dictionary offers a few definitions. I contend that's the one. It's quoted in my brief here. But, you know, we're far removed from what the Superior Court was looking at. And why do we need to presume that these decisions weren't strategic at the time? I mean, we have this double deference we owe in Strickland on strategic decisions. He doesn't have a tactical reason for one of them that he can think of. I mean, that's a tough bar for you. Well, that's where this Nunez v. Mueller case talks about. Where I was talking about the fact that he was prevented from further factual development because there was no issuance of an OSC. I'm not complaining about state court procedure or making a claim about state court law. But Nunez v. Mueller says, look, he's set forth a prima facie case. You know, but he needed further factual development. I see that I'm down to three and a half minutes. Yeah. Okay. So I'll reserve. Thank you. We have a mistake. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. There is a clear reason actually shown by the record for the discussion as to why he would not proceed with the theory that the officers just didn't find it. Glaser's opening statement makes clear that his strategy is not to put the jury in the position of criticizing the police. He says, we're not going to be attacking any police officers. The investigation that they did was perfectly okay. So that's a clear tactical reason for not suggesting, oh, there were more cases in the car. The police just didn't find it. That's at ER, second volume of ER, page 106. I know counsel here also is arguing that, again, the gun was inside the car. There's a problem with that as well. That is defeated by Petitioner's own testimony. He, in light of the other testimony that the hand was at least partially outside, at trial in his own testimony, he said, oh, no, Brown's hand, the firing hand, was indeed at least a bit outside the car. So that is another reason not to call a witness whose opinion is going to be based on the fact, on an assumption the gun was inside the car. I, the only other point that actually I really would like to emphasize is the argument that the Petitioner's claim that the court invited reconsideration of the ruling excluding the three items of extrinsic evidence. I believe counsel is honest when he views the record that way, but it is at least, at least one reasonable jurist could find at least one attorney viewed it differently in court. What the court had just done was say, these three items of extrinsic evidence are out. They're out, and not because they're hearsay, but simply because they're not worth the trouble. You're talking about Shipman at this point? Yes. Okay, thank you. The, it may have also included the burglary, I don't remember if that came from Shipman alone. But then Mr. Blaser, defense counsel, goes to extrinsic evidence. I assume I'm at least allowed to ask him about his experience with guns. And the court says, yes, oh yes, of course you can. But he then cautions him that, well, if he says no, though, when you ask him about familiarity with guns, I don't know where then you would be going to. I mean, what are you going to do? You might have some A, B, and C, and I'll need to hear what A, B, and C are, and you can make a proffer. Well, that would be inconsistent with the court saying, at that point, if he says no, we can, I can reconsider what I just heard, which you already made a proffer about, and which I do know about. The court is saying, I don't know where you're going to be, because you're going to need something else if he says no. Because the court has ruled the items I just ruled out, they're out. So, there's no invitation to reconsider as to those, because the court wouldn't be saying, I don't know what you would do, if he's saying, clearly, at that point, you could ask reconsideration of what I just excluded. So, those are the major points I would make. I am quite happy to answer any questions, but I don't have any further affirmative points that I wish to make. No. Thank you, counsel. We'll hear everybody. Thank you, Your Honor. Let me respond, because this takes me to, really, a third point I wanted to make. Respondent considers the fact that, apparently, Blazer's strategy at trial was not to criticize the police. You know, and he's using that as a basis. I believe the relevance of that in Respondent's argument was, maybe, the search for the casings outside the car. But, see, he's coming with, that's not in the Superior Court decision. Okay? He's coming with, kind of, a new ground. So, that topic doesn't get at the difference. That, if you find this to be unreasonable, either application of the law or termination of facts, then you can review the case de novo, and at that point, you know, you can order an evidentiary hearing if you want more factual development on that. But, I just want to be careful with all these new grounds, because, really, in the District Court, the briefing seemed to be, you know, Block quoting the opinion and saying, that's reasonable. I mean, obviously, there was more argument than just that, but that was, kind of, the flavor. There wasn't any of these new reasons. Counsel, this event happened almost 13 years ago. Yes. And you want to have an evidentiary hearing about who was thinking what, when, and what their strategies were? Well, I would rather the court just grant it without an evidentiary hearing. But, you know, that sometimes doesn't happen. And, yes, the answer to your question is, yes, if this court's inclined to use one of these new theories raised for the first time on appeal, not considered by the Superior Court, if you're inclined to use that to affirm, then, of course, I would want an evidentiary, I would ask to be remanded for an evidentiary hearing, to ask Blazer some of these tough questions. And the respondent, obviously, can ask the tough questions, too. But I believe that's not necessary. I believe that you can reverse a district court decision and that you can. Did you want to talk about eyewitness identification witness, too, or? Yes. I mean, it hasn't come up, but that was obviously, that was an issue where Blazer says that he got some advice to take that, to take, to consider it. He never consulted. And, I mean, you kind of get into Harrington versus Richter, and also this court's decision, and Johnson versus Whedon. There are some cases where, you know, post hoc rationalization is not going to cut it. And you need to consult that expert, if not call them as a witness. But what would the expert say? That the eyewitnesses who didn't see the gun are right, and the witness who did see the gun was wrong because they were all under stress? I mean, you were, you didn't, you know, usually the eyewitness identification expert is talking about a misidentification of a suspect, not describing what happened, right? I agree, but I got one second, if I can answer that question, I just ran out. The importance is in their declarations. There was two experts supporting the petition. And the importance is not so much talking about individual witnesses, but to arm Blaser with facts, if he could argue in closing argument, about the psychological effects of memory, and the fact that memories can be reconstructed. In this case, at prelim, the district attorney was the first person, he said he saw, he was talking about a hand out the window, and then he states a fact not in evidence at prelim, and says, so about this arm, he starts talking about the arm all of a sudden. And then he adopts this arm. The expert could have put these principles of psychological memory reconstruction into the trial court record so that Blaser could have argued it. He actually tried to argue it without that, and got into this, the whole guerrilla basketball thing in his closing argument, and it failed. I'm definitely over time. Thank you, counsel. Thank you, thank you very much. Thank you for your evidence this morning. The case just heard will be submitted for decision.
judges: THOMAS, BENNETT, Lasnik